The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Robert J. Stagman presiding. Thank you, Mr. Bailiff. This last case this afternoon for us is 425-0014 People v. Eddie Barnes. I ask counsel for the appellant, please state your name, sir. My name is Matthew Goldman on behalf of the people. Okay, thank you. And counsel for the appellate, please state your name. Alice Grigsby with the Office of the State Appellate Defender. Thank you, Mr. Goldman. On behalf of the appellant, you may proceed. Thank you, Your Honor. Without any prefatory remarks, I want you to tell me why those two errors were not material and tell me what probable cause existed without those two errors. Yes, Your Honor. The reason these errors were not material is because sufficient probable cause existed, even if we were to simply subtract those errors from the entire affidavit. Without those errors, what we still have includes the confidential source who said that the defendant was storing cannabis and other drugs inside that target residence, the affidavit from the officer that that confidential source had been reliable in the past, the defendant's significant criminal history, which included drug dealing over essentially a long period of time. He was incarcerated, he dealt drugs again, convicted, and the cycle repeated itself. The confidential source claimed that multiple prior drug purchases occurred from the defendant, even before this case essentially got started, before the police got involved. And then, obviously, the police corroborated all of this information when they did three drug-controlled purchases where the confidential source purchased from the defendant. And just as the confidential source suggested it would occur, that's what happened. The defendant left the home, got into his vehicle, drove to his relative's address, where the drug transaction then took place. And then, Your Honor, also the police found cocaine residue when they did a trash pull outside of the residence, along with indicia of residency. And I certainly understand that opposing counsel argues that this was a small amount of cocaine, but that's still an indication of criminal activity. There's no exception for small amounts of cocaine, and obviously even small amounts of cocaine can be transferred from one person to another. So that is an indication that a felony was taking place, or at least certainly had taken place very, very recently inside that home. And then one of the things that is particularly important for this case that courts brought up time and time again in the appellate court, in the Eleanor Supreme Court, is when an officer writes this affidavit, but doesn't explain their base of knowledge, why they believe that these facts support an inference that actual criminal activity is taking place inside this home. That is a critical part of this affidavit. And in this case, Officer Eagle did include a statement that he had experienced in training that showed that drug dealers do store items related to their drug trade inside their home, in addition to on their person in their vehicle. But he describes things like weapons, scales, police scanners, money, more drugs. And so based upon all of these facts, which do not include these errors, the court had more than sufficient evidence to conclude that probable cause existed. Thank you, Mr. Goldman. Thank you, Your Honor. But I would argue that even beyond the fact that this probable cause existed when setting aside these errors, another critical thing that the trial court unfortunately got wrong is the unfortunate but innocent nature of this mistake. Everybody appeared to agree to one extent or another that this was an honest mistake. That's the word that the court used when describing this. Now, I had some discussion of the policy behind the exclusionary rule in my brief, and so I won't go into it too in depth. But the gist of it is that the exclusionary rule is a tool to deter deterrable conduct. And that's why it's saved for situations where it's intentional knowing, or at the very least, a reckless disregard for the truth. Now, counsel, when they made their reply to my brief, did not appear to dispute that the trial court was justified in determining this was an honest mistake. What they instead seemed to argue is that this honest mistake was still a reckless disregard for the truth. Now, I would submit to this court that that would destroy any meaning we have with the term reckless. Obviously, we all know that in other contexts in the law, negligence is a lower kind of culpability than recklessness. We see that in civil law all the time. Under this situation, although obviously the word negligence was not used, an honest mistake seems to be the kind of thing that almost doesn't even qualify as negligence. If it is negligent at all, it is of the barest kind. It's one where this person did not know they were doing the wrong thing when they did it. And so under these circumstances, this seems to be precisely the kind of undeterrable error that the exclusionary rule is not meant to apply to. And so for these reasons, we would ask that this court conclude that the trial court came to the correct factual finding that this was an honest mistake, but then came to the wrong ultimate legal conclusion that an honest mistake could justify suppression. And for that reason, in addition to the fact that setting aside these errors, there would still be a probable cause, we would argue that suppression was not warranted, and therefore this court should vacate that order granting the motion to suppress and remand for further proceedings. But I also would like to address counsel's argument they brought up in their response to my initial brief, in which they argued for the first time on appeal that there was no nexus between the drug activity outside the home and the home itself. As I stated previously when I was discussing the probable cause that existed, there was significant evidence that drug activity was occurring inside the home, and I would again emphasize that the training and experience of the officer seems to be the missing ingredient in a lot of these cases in which no nexus is found, and that was present in this case. And for that reason, this court should conclude that this nexus existed and reject defendant's argument. At this point, I would certainly be open to any questions your honors might have for me, but if there are no further questions for the rest, I would simply stand in the reign of my brief and address anything further in rebuttal. And certainly we'll have some questions for you in rebuttal. Ms. Grigsby, on behalf of the Appellate League, you may make your argument at this time. Thank you. May it please the court. My name is Alice Grigsby with the Office of the State Appellate Defender, and I represent Mr. Eddie Barnes today in asking this court to affirm the trial court's suppression order in this case. Two distinct reasons exist to compel suppression in this case, both of which I intend to discuss today in response to the state's arguments. First, the affidavit in this case contained a false statement that was made with a reckless disregard for the truth, and it was material to probable cause. For that reason alone, the trial court was correct. Which statement? The false statement related to Mr. Barnes being the account holder or the account owner of the MidAmerica Energy that specific statement. If I understand correctly, Officer Eagle testified, and you'd be interested if there was any conflicting testimony. He said he spoke to the MidAmerica Energy company and it was advised that the defendant was, quote, an authorized user of that account, end quote. He was also informed that the authorized user could make changes to the account, pay the account, receive billing information. Now, in what significant and material way does being an authorized user of that account differ from being the account holder? The difference is significant because an account holder is the person who is, who receives the bills at the residence. The account holder is the individual who is actually tied to and established at the residence. An authorized user, correct, Officer Eagle testified that that individual has the ability to make billing changes and things like that, but also does not have the ability to, like, connect or disconnect service at the location. So there are less, there's less access given to an authorized user, and there could be many reasons why a person would be an authorized user for someone's account that does not link them to the residence, living in the residence, staying in the residence, or link them to the residence in a significant way. Why do these differences make it a material misrepresentation? I'm sorry, can you repeat the question, please? Yes, why do the differences between being an authorized user and someone whose account is in his name, why do those differences constitute material misrepresentations? Yes, so what the court is looking at in reviewing the material misrepresentation is whether the false statement that was used is material to probable cause. So the statement that Mr. Barnes was a, the account owner, or a statement that he's an authorized user, but especially the actual false statement that was used here, that he was the account owner, was material to probable cause because it was the strongest link between Mr. Barnes and the home. Well, a couple questions. First, is Mr. Goldman correct that in our analysis of the complaint for search warrant, that one way to approach this argument is to ask, had the points that the trial court said were inaccurate or false, however you want to claim it, not been trusted, but there have been sufficient averments in the complaint for search warrant to justify issuing the warrant? That is the proper procedure, that if the false statement is removed, if there is probable cause still, then the evidence should not be suppressed. But here, absent that statement, there is not probable cause. Let me state it this way. Before we got on this wonderful job, each of the members of this panel had honest work as trial judges, as I like to put it, and we each dealt over our careers with probably dozens, maybe even hundreds of complaints for search warrants and search warrants, I personally was involved in that. And what I was left with was a clear impression how the complaint for search warrant in this case was dramatically more thorough and complete than the great majority of the complaints for search warrant either saw as a trial judge or on appeal before this court. The notion that somehow this complaint is deficient without these two averments strikes me as fanciful. What's your explanation? Well, as an initial note, the argument is that altogether with the averments or without the averments, there's not sufficient probable cause. Mr. Barnes does not argue that there is probable cause with the averment that he is the account owner or the authorized user. The argument is that on top of that, above and beyond the Frank's issue, there is not sufficient probable cause here when looking at that. Based upon these 19 detailed paragraphs and the sworn complaint for search warrant, that a judge could not find probable cause to believe that there would be drug or drug paraphernalia to be found at 3408 22nd Street in Rock Island. That's your argument? Correct. And the decision in People v. Manzo controls that result. The state clarifies or distinguishes many of these cases by relying on the fact that and emphasizing that this statement about the officer's training and experience is the missing link, the one missing link that would provide a nexus between Mr. Barnes and the residents or between the residents and the alleged criminal activity. But in People v. Manzo, the Illinois Supreme Court reviewed whether an alleged drug leaving from the residence, being observed leaving from the residence for multiple buys was sufficient to create that nexus and held that it was not. And notably, the state relies on People v. Clagon, which was cited by the court in Manzo, in distinguishing, again, that in that case, the Massachusetts Supreme Court had found that there was a sufficient nexus. But the Manzo court, the Manzo court specifically distinguished that case and found that the Clagon case had more, had more facts. The state also argues, counsel, and I want you to address this, among other factors, in support of the search at the address I just mentioned, paragraph 18 of the complaint, says that the officer, Officer Eagle, and his fellow officers conducted a trash survey of trash that had been sent out in a trash receptacle. At the target receptacle, at the target residence, they received trash in which they located, not just resident, which testified it was cocaine, but also in this year residency in the form of U.S. mail addressed the defendant at that address. The state cites that as being one more thing linking the defendant to this residence. Isn't the state correct to do so? No. Without more information and more facts to connect that piece of mail to Mr. in describing what that piece of mail was, how it connects him to the address, was it a piece of government mail? Was it something like a traffic ticket? And for example, in People versus Burmeister, which is a third district case that was cited by the state in their opening brief, that court reviewed a similar circumstance where a trash pull had been done and the officer located cocaine baggie, multiple baggies, and corner baggies with cocaine residue, as well as, I believe, a glass straw and indicia of residency. However, the court noted that the officer did not what that was, did not provide additional facts to describe what that was. Let me ask this question with regard to that. Is there any difference between this U.S. mail addressed the defendant as address being found in his trash? Or let's say this U.S. mail addressed the defendant being found in a bedroom of his to indicate this is his connection. He's venue in this facility, this residence. Is there any difference between those two? The, well, the analysis of whether it would provide enough indicia of residency without those additional facts. To link the defendant to the premises in question. Correct. Without additional facts as to what that piece of mail is, because it has been ruled that a piece of junk mail is not indicative of a person establishing residency or creating a nexus between a person or an individual and a specific residence. That's not what this court wrote two years ago in People v. Neal counsel, in which we explained in some great detail how this was not only admissible for purposes of a search warrant, but admissible as evidence against the defendant to show constructive possession that this was his premises and he was responsible for the contraband found there. An additional difference would be to note would be the fact that relating back to the case of People v. Burmeister, where in that case, the court also ruled that a search warrant based on contraband found in a trash can, which is what we have here, a judge could issue a search warrant for a residence based on contraband in the trash receptacle if indicia of residency is found with it as well. However, only if the affidavit contains an eyewitness statement of somebody who observed the resident discarding of the trash. Again, to create sufficient facts to make that nexus between the defendant and the home and the rest. So a judge deciding whether there's probable cause to think that there's drugs inside these residents can't accept the notion that this is the trash for that residence and that the defendant was putting trash in this trash bag and the fact that his name appears on a letter there that's of no assistance. The contraband being found in the trash can. No, because without any additional facts that established the resident was the one who deposited that into that trash receptacle. No, it doesn't. It doesn't provide a sufficient nexus. Well, we're not talking about proof beyond the reasonable doubt at this point, though, frankly, I think if this had been stipulated evidence at a trial, I'd be inclined to so conclude. What we're just talking about is their probable cause to believe are the reasonable grounds to believe that drugs can be found in this residence. And you're saying we can't consider all of this. We can't consider the trash. We can't consider the letter. Well, to clarify, it can be considered, but considered as a whole, it still does not provide a nexus between Mr. Barnes and the home or between the home and the alleged criminal activity. And that goes back again to people versus Manzo, where the Supreme Court has ruled that situations such as these, where an alleged drug dealer is witnessed leaving a residence and engaging in a controlled by that, it's not sufficient to conclude that there's evidence of the drugs inside the home. And again, the state falls back on this statement by the officer and the officer's experience as if that is the one missing piece that can create a nexus. But what the state fails to recognize is that the officer's experience cannot create a nexus out of nowhere. The officer's experience... Manzo, so the other case you cited, don't come close to having the vermin under oath in support of a search warrant that is present in this case. Do they? Are you claiming they do? I'm sorry, I'm not sure I heard the question. Are you claiming that the complaints, the grounds for search in those cases are at all like the extensive, separate, sworn paragraphs in this case that justify the search? Manzo said nothing like that. I'm sorry, I'm not sure I understand what the question... You keep citing Manzo, and I keep pointing out that Manzo's, the basis for what the police did there is nothing close to the extensive grounds present in this complaint for search warrant, is it? It is. It's very close. The facts are very, very similar and almost... Almost... The facts are very similar to that of this case. And cases that the state relied on involved, to show that there was a nexus, also involved significantly more factors. For example, in People v. Beck, cited by the state, that was a 16-page affidavit where two confidential informants had been involved, and two confidential informant had advised or had reported that the house was a location for drug activity and drug sales. This was confirmed through a member, another member of law enforcement within a specialized gang unit who corroborated the information with other members of the gang. And additionally, in that case, and importantly, in that case, the property was tied to the alias and indicated the defendant had purchased the property under that alias name when officers did a record check that matched the name. So the issue in all of these cases, whether there is enough of a nexus, is the established facts, whether there are sufficient facts to provide a nexus between Mr. Barnes and the home, and the home and the alleged criminal activity. Mr. Barnes doesn't dispute that there was sufficient probable cause for the warrant, the search warrant of his person, or the search warrant of the car. But left alone here, or not left alone, what we have here in this affidavit, the state kind of characterizes it as a factual discrepancy in relation to the amount of controlled buys. But even if we look at the amount of controlled buys, Mr. Barnes disagrees that there's a factual discrepancy. It's really a lack of clarity in the affidavit itself. On paragraph 11, it describes that confidential buys occurred between the dates of November 16th and December 7th. But it doesn't say the number of buys. It doesn't specify any quantities. It doesn't specify whether Mr. Barnes stopped between leaving the residence and stopping at point B. It doesn't specify whether Mr. Barnes returned to the residence afterwards, which is also... Also, might I suggest that you are basically arguing the difference between probable cause and really, really, really good probable cause. What you're doing, and you're doing it very well, is picking out a particular point and then arguing that, well, that by itself isn't going to be enough. Yeah, you're right. And this one over here has been specifically referenced in People versus Manzo, and that's not going to be enough. That's correct. The difference we have, however, is the significant amount of additional corroborating evidence, including both the statements of a tried and trusted CS, the observations by the police officers themselves, and the actual controlled buys also observed by the police officers and their surveillance in watching the defendant travel to and fro during each of the instances. When you put all of those together, that's a different picture than the one that you're doing a very good job of painting, and that is pulling out just one piece at a time and arguing how that's not probable cause. Again, I would go back to my initial statement. You're really arguing the difference between probable cause and really, really, really good probable cause. Well, the argument actually relies on, and I understand the justices' framing of it that way, but it's not necessarily an issue of probable cause and really, really good probable cause. It's that the Illinois Supreme Court has held that there has to be this nexus, a nexus between the individual and the residents or a nexus between the residents and the alleged criminal activity. While addressing each of the individual factors, the point is that in looking at this affidavit as a whole, no, it does not provide that sufficient nexus. The errors and the deficient facts that don't show a nexus between Mr. Barnes and the home add to the errors that don't show a nexus between the home and the alleged criminal activity. Respectfully, the officers did not observe Mr. Barnes go to and fro, and that's an important part. The clag on court that was distinguished by Manzo indicated that it was important that that defendant returned back to the home following the transactions. That's important to show as a whole that there was a nexus showing that ongoing criminal activity was occurring at that home. Here, all we have is Mr. Barnes leaving from the address twice before completing a controlled by in Iowa out of his vehicle. There is simply not a sufficient nexus to tie him to the home. And on top of that, based on the false statement that was made with a reckless disregard for the truth, the suppression order was correct. And Mr. Barnes asks this court to affirm. Thank you. Thank you, counsel. Mr. Goldman, any rebuttal, sir? Yes, Your Honor. Thank you. So starting first with this claim that there was some insufficient nexus, I completely agree with Justice DeArmond's analysis that, you know, counsel Grigsby is pointing out these individual things, but they're not to be considered in a vacuum. They're taken together when determining whether or not probable cause exists. And, you know, frankly, short of just showing really, really good probable cause, this sounds like almost a standard. They would have to show proof beyond a reasonable doubt. I mean, the notion that you'd have to have more than one confidential source, you must have two or something of that nature. It would create such a burden on the police, their investigative abilities. When I think that the case law is quite clear, the standards is quite different from that. Quoting Manzo, they say, as stated by the Court of Appeals for the Sixth Circuit, there must be, in other words, a nexus between the place to be searched and the evidence sought. Quoting another decision, stated otherwise, a warrant application must give someone of reasonable caution, reason to believe that evidence of a crime will be found at the place to be searched. Now, that is very different than the kind of proof that the defense is demanding here. In this situation, a person of reasonable caution based upon the confidential source, based upon the finding of the physical evidence in the trash, based upon the police's own observations, based upon the multiple controlled buys, and based upon all of these things taken together and applying the officer's experience about what these facts mean, should clearly be enough for the court to determine that evidence of this drug activity could be found in that home. And for this reason, this court should determine that a sufficient nexus did exist in this case. Anything further? Oh, nothing further, Your Honors. With that, I would simply rest upon the strength of my brief and ask that this court vacate the trial court's order. Thank you. Thank you, counsel. I thank both counsel for your arguments, and this court will take the matter under advisement and due course issue an opinion, and we'll stand in recess at this time.